JOSEPH J. SULLIVAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56671. Promulgated December 3, 1935.

*Joseph J. Sullivan, Esq.*, pro se.
*Paul D. Page, Jr., Esq.*, for the respondent.

### OPINION.

MELLOTT: In this proceeding petitioner contests a deficiency in income tax determined by the respondent in the amount of $75.25 for the calendar year 1927 and $448.59 for 1928. The sole issue is whether certain compensation received by him from the city of Chicago is exempt from Federal income tax.

Petitioner is a resident of Chicago, Illinois.

The law department of the city of Chicago, an executive department of the municipal government, comprises the corporation counsel and his assistants and clerks. By ordinance, the corporation counsel is the head of the law department, empowered to superintend and conduct all the law business of the city and to appoint and remove any and all of his assistants. His office is divided into three branches—the city attorney's office; the city prosecutor's office; and the attorney for the board for local improvements. All attorneys and assistant attorneys are appointed by the corporation counsel and referred to as "Assistant Corporation Counsel."

From 1919 to 1928 the city of Chicago engaged in a comprehensive plan of widening and extending several of its larger, or arterial, streets. Bond issues were floated to pay the part of the cost of such improvements charged against the city as a public benefit, and assessments were levied against contiguous property under the provisions of an act passed by the General Assembly of Illinois, in 1897, entitled "An Act concerning local improvements." Thousands of pieces of property were condemned under the power of eminent domain contained in that act, for the purpose of acquiring property necessary to be used in widening the streets.

In 1915 petitioner was appointed to the position of assistant corporation counsel of the city of Chicago. His term of office was not fixed, but depended upon the will of the corporation counsel. From 1915 to 1919, he was assigned to the city attorney's office and represented the city in personal injury cases brought against it. In 1919 he was assigned to the office of the attorney for the board of local

improvements to try condemnation cases. From 1919 to, and including, the years 1927 and 1928, his duties consisted of trying such condemnation cases, briefing those which were appealed to the Supreme Court, and writing opinions for the board of local improvements on questions arising under the local improvement act. These services were performed under the direction of the attorney for the board of local improvements and the corporation counsel.

During the taxable years here in controversy, petitioner was engaged chiefly in matters relating to the widening of Western Avenue by taking seventeen feet off of the abutting property on each side of it for a distance of approximately twenty-three miles.

The city furnished an office for the corporation counsel and his various assistants, and petitioner's name, as well as the names of the other assistant corporation counsel, appeared on the office door under the name of the corporation counsel.

During part of the year 1927 and for a number of years prior thereto, the city of Chicago paid petitioner an annual salary of $7,000 per annum; but in 1927 the method of payment was changed from a yearly basis to a per diem basis at the rate of $50 per day. The same duties were performed by petitioner after the change in the method of payment as were performed by him prior to the change. He was not compensated for Sundays, holidays, or Saturday afternoons, and sometimes his compensation for November and December was not received until January of the following year.

The sums received by the petitioner on the per diem basis in 1927 and 1928 were approved by the corporation counsel and charged against the special fund allocated to legal services in connection with the particular project. Bond issues had been approved by the people on a referendum. From the funds derived by the sale of bonds, the city council appropriated the sum of $50,000 from the Western Avenue street improvement fund " for legal services to be expended under authority and direction of the corporation counsel." It was from the fund thus set up that petitioner was paid.

During the years 1927 and 1928 petitioner devoted all of his time to the work of the corporation counsel's office. He was not free to engage in private law practice or in other business which would interfere with his duties as assistant corporation counsel. Occasionally he did a small amount of legal work in the evening, but he maintained no private law office. He filed his income tax returns and reported his income on the cash receipts and disbursements basis.

Petitioner was not required to take any oath of office or give any bond and he took no oath of office and gave no bond. The per diem compensation received by him amounted to $4,687.50 in 1927 and $12,750 in 1928. The deficiencies here in controversy result from his failure to report these amounts in his Federal income tax returns.

The compensation received by petitioner is "income * * * or compensation for personal service * * *" (sec. 22, Revenue Act of 1928) and is not exempt from Federal taxation by any specific statute. If, however, it was received from a state or political subdivision thereof, as an officer or employee, for services rendered in connection with the exercise of an essential, or usual, governmental function, exemption may be recognized, for:

* * * the very nature of our constitutional system of dual sovereign governments is such as impliedly to prohibit the federal government from taxing the instrumentalities of a state government * * *. Those agencies through which either government immediately and directly exercises its sovereign powers, are immune from the taxing power of the other. * * * Each government in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other. [Metcalf & Eddy v. Mitchell, 269 U. S. 514.]

We therefore have for determination the composite question, the several parts of which are: (1) Were the services rendered by petitioner in connection with an essential or usual governmental function; and (2) was he an officer or employee of a state or political subdivision thereof?

It can not be gainsaid that the law department is a part, and a very necessary part, of the executive branch of the city government. At least as to the duties performed by it through the " City Attorney's office " and the " City Prosecutor's office " no one would seriously contend that they were not " usual or essential governmental functions." But should a different conclusion be reached as to the duties performed through the " attorney for the Board of Local Improvements? "

This section, or branch of the law department, like the " City Attorney's office " and the " City Prosecutor's office ", was comprised of a chief attorney and numerous assistants. They were all designated "Assistant Corporation Counsel ", and were engaged in performing the duties usually performed by attorneys employed by a municipality. They were furnished offices, apparently with the corporation counsel; their names were painted on the door, along with the corporation counsel; they were appointed by him, and served during his pleasure. The attorneys in that section, or branch, were engaged chiefly in trying condemnation cases, writing briefs and advising with the board upon legal problems.

The rather voluminous stipulation filed with us quotes seriatim many provisions of the Local Improvement Act passed by the General Assembly of the State of Illinois in 1897, under which the board of local improvements was created. This act contains an authorization for the board to " appoint an attorney for the Board who shall have charge, under its direction and control, of all legal matters ";

however, the Supreme Court of Illinois, in *People* v. *Faherty*, 306 Ill., 119; 137 N. E. 506, held that such provision had been impliedly repealed by the amended city and village act, which made the corporation counsel the head of the law department, stating, in its opinion:

"Law department" of a city or other government means a department having charge of the law business of the government. A city maintaining such a department cannot, as a general rule, hire or employ outside counsel to attend to the legal business of the city. * * * The intention of the Legislature making the corporation counsel * * * the head of the law department * * * was to combine in one department and under the direction of one responsible head the city's law business.

We are convinced that petitioner was an assistant corporation counsel employed by the law department of the city of Chicago. Most of his time was devoted to condemnation proceedings necessitated by the plans of the city government to widen and extend its arterial streets. The duties he performed were in connection with and a necessary part of the work of providing streets for the comfort and convenience of people of the city. Such a function is essentially governmental. *John B. Hittell*, 33 B. T. A. 276.

There remains for our consideration respondent's contention that the payment of petitioner's compensation on a per diem basis, precludes us from determining that such compensation is immune from Federal income taxation. This contention is stated thus: "The stip·ulation shows that during some time in 1927 he changed from his salary to a per diem basis, *and it is upon that and not upon the salary received at any time*, that this tax [set out in the deficiencies] is based." (Emphasis supplied.) "During a part of the year 1927 * * * this petitioner was paid upon a salary basis and no attempt has been made to tax him upon this salary."

This circumstance, while persuasive, is not controlling here. If petitioner was an employee—and we hold that he was—the mere fact that the parties adopted a different "method of measuring his compensation" (*United States* v. *Butler*, 49 Fed. (2d) 52) is immaterial. He performed the same tasks after the change in the method of payment was made as he did before. The department had first call upon his services, which were regular and continuous. He engaged very little in private practice—not even sufficient to justify the expense of maintaining a private office—confining such practice almost exclusively to drawing contracts, or examining abstracts, at his home. He testified that he had no outside law business, and that outside practice had been prohibited by his superior officer, the corporation counsel.

Presumably, respondent is contending that petitioner's services were rendered as an independent contractor. This term is so well understood that we deem it unnecessary to define it. Suffice it to say that the evidence fails to show that freedom from direction and con-

trol which characterizes the relationship of independent contractor. On the contrary, the record is replete with testimony and circumstances indicating the ordinary relation of employer and employee. Cf. *Richard E. McIntosh*, 16 B. T. A. 1400; *Frederick A. Brown*, 22 B. T. A. 581; and *John B. Hittell, supra.*

We do not need to discuss or determine whether petitioner was an officer of the city of Chicago. We have found that he was an *employee*. Being an employee, engaged, as we have found, in an essential governmental function, the rule so often enunciated, is clearly applicable. " The instrumentalities, means and operations whereby the states exert the governmental powers belonging to them are * * * exempt from taxation by the United States." (*Ohio* v. *Helvering*, 292 U. S. 360.) It follows that the respondent erred in determining the above deficiencies.

*Judgment will be entered for the petitioner.*